907 P.2d 807

**CONTINENTAL CASUALTY COMPANY, d/b/a The CNA Insurance Companies, Plaintiff–Respondent Cross–Appellant,**

v.

**Michael BRADY, Michael Powers, and Brady, Lerma & Thomas Chartered, Defendants–Appellants Cross–Respondents.**

**Docket No. 21322.**

Supreme Court of Idaho,
Boise, September 1995 Term.

Dec. 5, 1995.

Cosho, Humphrey, Greener & Welsh, P.A., Boise, for appellants. Robert W. Talboy argued.

Hall, Farley, Oberrecht & Blanton, P.A., Boise, for respondent. Joseph K. West argued.

TROUT, Justice.

This declaratory judgment action was initiated by the respondent/cross-appellant, Continental Casualty Co. (CNA). CNA contends that the insurance policy it issued to the appellant/cross-respondent, Michael Brady et al. (Brady), does not provide coverage for certain third-party claims brought against Brady. For this reason, CNA also contends that it has no duty to defend Brady in the underlying lawsuit.

## I.

## BACKGROUND

On July 1, 1989, Dale and Debbie Duvall hired attorney Golden Bennett to represent them in an action involving the near drowning of their son. Bennett and the Duvalls entered into a fee agreement whereby Bennett agreed to pursue a personal injury claim on behalf of the Duvalls. In return, the Duvalls agreed to pay Bennett thirty-three and one-third percent of any net settlement, recovery, or judgment realized on the personal injury claim. Subsequently, Brady took over the case pursuant to the existing fee agreement and successfully negotiated a $393,000 settlement. However, the settlement was divided in such a manner that only $216,930 of the money received was attributed to the Duvalls' personal injury claim. The remaining $176,070 was attributed to a separate "contingent wrongful death" claim. Accordingly, under the existing fee agreement, Brady was only entitled to thirty-three and one-third percent of $216,930 less costs and expenses.

On December 13, 1991, the day following settlement, Brady persuaded the Duvalls to enter into a second fee agreement. Under the terms of this agreement, the Duvalls agreed to compensate Brady in the amount of $122,500 for obtaining the $176,070 wrongful death settlement. On March 26, 1993, the Duvalls filed suit against Brady alleging that he improperly took too large a fee for his services in representing them. They sought to recover $122,000 in compensatory damages, and an unspecified "amount in excess of $10,000" in punitive damages.

Brady was insured by CNA under a "Lawyer's Professional Liability Policy" which provides coverage for liability arising from the insured's "wrongful acts." However, it contains an exclusion from coverage for any "claim for return of fees," and an exclusion for claims for punitive damages. On March 30, 1993, Brady formally tendered the defense of the Duvall matter to CNA and requested coverage for any damages resulting from the lawsuit. CNA denied coverage on the ground that the Duvalls' lawsuit did not relate to the rendering of professional services, and because the Duvalls sought only a return of fees and punitive damages. For this reason, it also refused to defend Brady in the Duvall lawsuit. On September 27, 1993, CNA filed the present action seeking a declaration that it has no duty to defend Brady, and that the malpractice liability policy issued to Brady provides no coverage for the claims asserted by the Duvalls.

## II.

## PROCEDURAL HISTORY

On November 17, 1993, Brady filed a motion for partial summary judgment requesting the district court to rule as a matter of law that CNA had a duty to defend Brady in the Duvall case. On December 7, 1993, CNA filed a cross-motion for summary judgment requesting a ruling that it had no duty to defend Brady, and that the policy of insurance did not provide coverage for the claims asserted by the Duvalls. On January 27, 1994, Brady filed a motion asking the district court to stay its decision on the issue of coverage pending the resolution of *Duvall v. Brady*.

The district court concluded that CNA had no duty to defend Brady and that there was no coverage under the policy. Accordingly, it issued an order granting CNA's motion for summary judgment and denying Brady's motion for partial summary judgment and motion to stay. These rulings form the basis for Brady's appeal.

After the district court granted CNA's motion for summary judgment, CNA requested attorney fees pursuant to I.C. §§ 12–121 and –120(3). On June 9, 1994, the district

court denied CNA's request. On September 6, 1994, the district court denied CNA's motion for reconsideration of its decision on attorney fees. The trial court's denial of attorney fees under I.C. § 12–120(3) forms the basis for CNA's cross-appeal.

## III.

## STANDARD OF REVIEW

When reviewing a ruling on a motion for summary judgment, this Court's standard of review is the same as that used by the district court in passing on the motion. *Curtis v. Firth,* 123 Idaho 598, 610, 850 P.2d 749, 761 (1993). We liberally construe the facts in favor of the non-moving party and determine whether there is a genuine issue as to any material fact, and whether the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c); *Anderson v. City of Pocatello,* 112 Idaho 176, 179, 731 P.2d 171, 174 (1987).

## IV.

## WHETHER THE DISTRICT COURT ERRED IN CONCLUDING THAT THE DUVALL COMPLAINT GAVE RISE TO NO POTENTIAL FOR A COVERED CLAIM

### A. Duty To Defend

"The duty to defend arises upon the filing of a complaint whose allegations, in whole or in part, read broadly, reveal a *potential* for liability that would be covered by the insured's policy." *County of Kootenai v. Western Cas. & Sur. Co.,* 113 Idaho 908, 910, 750 P.2d 87, 89 (1988) (quoting *State of Idaho v. Bunker Hill Co.,* 647 F.Supp. 1064, 1068 (D.Idaho 1986)) (emphasis in original). An insurer seeking to establish that it has no duty to defend faces a difficult burden since, at this stage, any doubts as to coverage must be resolved in favor of the insured. *Id.* at 910–11, 750 P.2d at 89–90. In this case, however, the district court concluded that because the Duvall complaint gave rise to no potential for liability under the CNA policy, CNA did not owe Brady a defense.

On appeal, Brady contends that the district court took too restrictive a view of the allegations in the Duvall complaint, and that the complaint goes beyond a mere fee dispute. He supports this contention by pointing to the fact that the Duvalls allege a violation of the Idaho Consumer Protection Act and breach of fiduciary duty, in addition to claims relating directly to the enforceability or actual terms of the fee agreement. Brady also seems to assert that under his reading of the original fee agreement, the Duvalls are only entitled to a portion of the $122,000 claimed in damages as a return of fees. Therefore, according to Brady, the excess must represent damages beyond a return of fees.

The CNA insurance agreement provides that CNA will not defend or pay for "any fine, penalty, or claim for return of fees."[1] The focus of this exclusion is clearly on the relief requested. If the party is requesting a "return of fees," it is immaterial what the actual theory of recovery is since the policy flatly excludes "*all claims*" for the return of fees. *See Hofing v. CNA Ins. Cos.,* 247 N.J.Super. 82, 588 A.2d 864 (N.J.Super.Ct.App.Div.1991) (in interpreting the same exclusion the court concluded that even allegations of professional negligence would be excluded if they were aimed at the recovery of fees). Furthermore, whether the Duvalls are actually entitled to recover $122,000 or a lesser sum is not the issue. The issue is simply whether this amount represents fees paid to Brady.

The Duvall complaint contains five counts: (1) a claim that the fee agreement is unenforceable due to lack of consideration and overreaching; (2) a claim for breach of fiduciary duty; (3) a claim for unjust enrichment; (4) a claim for violation of the Idaho Consumer Protection Act; and (5) a claim for punitive damages. Each count, with the exception of the claim for punitive damages, contains an express reference to the cost and fee agreement entered into between Brady and the Duvalls. For example, as Brady points

---

1. There appears to be no dispute that the Duvalls' claim for punitive damages is excluded from coverage under the CNA policy.

out, the Duvalls allege that he breached a fiduciary duty. However, the complaint expressly states that as a result of this alleged breach, Brady "must disgorge the attorney fees paid thereunder."

Moreover, all of the factual allegations in the complaint center on a dispute over attorney fees, and the $122,000 sum requested as damages is tied directly to that fee dispute. Brady represented the Duvalls in two claims: a personal injury claim and a "contingent wrongful death" claim. The entire matter settled for $393,000. Thereafter, Brady persuaded the Duvalls to enter into a new fee agreement concerning the wrongful death claim. As stated in the complaint, this new agreement obligated them to pay "an additional $122,500 for the ... settlement of the ... contingent wrongful death claim." In requesting $122,000 in damages, the Duvalls claim Brady was only entitled to $500 in fees with regard to the wrongful death claim. The request of nearly the full amount paid in fees with regard to this claim is supported by the allegation that the fee agreement governing that claim was unenforceable.

In short, with the exception of the claim for punitive damages, the Duvalls' complaint simply does not support a claim for any damages unrelated to a return of fees. For this reason, the allegations in the complaint, even if true, do not raise a potential for a covered claim. Therefore, CNA did not have a duty to defend Brady in *Duvall v. Brady* and the district court's order granting summary judgment to CNA on this issue is affirmed.

**B. Coverage**

Since the Duvall complaint does not raise even a potential for a covered claim, the district court's order granting summary judgment to CNA on the issue of coverage is likewise affirmed.

## V.

### WHETHER THE DISTRICT COURT ERRED IN CONSIDERING EXTRINSIC EVIDENCE

CNA produced sworn statements made by Dale Duvall, the party bringing the claims against Brady, to the effect that the damages sought in *Duvall v. Brady* represent a return of wrongfully taken attorney fees. The district court found that this evidence supported its conclusion that the Duvalls' action concerned only the recovery of attorney fees. Although Brady contends that the district court erred in considering this extrinsic evidence, we need not specifically review this assignment of error. As stated above, the Duvalls' complaint itself very clearly establishes that they sought only a return of fees in *Duvall v. Brady*.

## VI.

### WHETHER THE DISTRICT COURT ERRED IN DENYING BRADY'S MOTION TO STAY

The district court denied Brady's motion to stay a ruling on the coverage issue pending the resolution of *Duvall v. Brady*. Brady contends that this ruling was erroneous.

■■■ The determination as to whether to grant a stay of proceedings pending the resolution of related proceedings in another court is a matter vested in the sound discretion of the trial court. *See Newell v. Newell,* 77 Idaho 355, 293 P.2d 663 (1956) (appellant's motion to stay proceedings pending the resolution of an appeal in a related California case went to the sound discretion of the trial court). In determining whether a trial court abused its discretion, we ask: (1) whether that court correctly perceived the issue as one of discretion; (2) whether it acted within the outer boundaries of that discretion and consistently with any applicable legal standards; and (3) whether it reached its decision by an exercise of reason. *State v. Hedger,* 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989) (quoting *Associates Northwest, Inc. v. Beets,* 112 Idaho 603, 605, 733 P.2d 824, 826 (Ct.App.1987)).

■■ In this case, the trial court applied the applicable law and reasoned that since there was no potential for coverage, it was unnecessary to grant Brady's motion to stay. Because the district court did not misapply the law, and because it reached its decision through the exercise of reason, we hold that

it did not abuse its discretion. Accordingly, the order denying Brady's motion to stay is affirmed.

## VII.

### WHETHER THE DISTRICT COURT ERRED IN DENYING CNA'S REQUEST FOR ATTORNEY FEES UNDER I.C. § 12–120(3)

The district court recognized CNA as the "prevailing party" pursuant to I.R.C.P. 54(d)(1)(B). It also concluded that the relationship between the parties arose as a result of the insurance contract at issue in this case, and that that contract is a commercial contract. However, apparently because it found that there was no liability under the contract, the district court denied CNA's request for attorney fees under I.C. § 12–120(3). It also seemed to rely on the fact that CNA brought this action, rather than waiting until Brady brought suit to recover under the insurance policy.

■ I.C. § 12–120(3) provides that in any civil action to recover on a contract relating to any "commercial transaction," unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney fee. As a threshold matter, Brady cites I.C. § 41–1839 and asserts that the legislature has spoken on the issue of whether attorney fees are recoverable in actions on insurance policies. Since the legislature did not provide for an award of attorney fees to an insurer in § 41–1839, Brady seems to contend that a result different than that sought by CNA is "otherwise provided by law," and that the existence of § 41–1839 precludes our consideration of an award of fees to CNA under I.C. § 12–120(3). This contention is without merit.

Section 41–1839 applies only in those specific instances where:

(1) [the insured] has provided proof of loss as required by the insurance policy; (2) the insurance company fails to pay an amount justly due under the policy within thirty days of such proof of loss; and (3) the insured "thereafter" is compelled to bring suit to recover for his loss.

*Hansen v. State Farm Mut. Auto. Ins. Co.,* 112 Idaho 663, 671, 735 P.2d 974, 982 (1987). Nowhere does this provision purport to disallow recovery, by an insurer, of attorney fees under a different statute in a declaratory judgment action dealing exclusively with whether the insurer has a contractual duty to defend or provide coverage. Accordingly, we hold that I.C. § 41–1839 does not preclude an award of fees under § 12–120(3), and we proceed with a discussion of the applicability of that provision to this case.

■ The term "commercial transaction" is defined in § 12–120(3) to mean "all transactions except transactions for personal or household purposes." Thus, by the plain terms of the statute, "[w]here a party alleges the existence of a contractual relationship of a type embraced by section 12–120(3), ... that claim triggers the application of the statute." *Farmers Nat'l Bank v. Shirey,* 126 Idaho 63, 73, 878 P.2d 762, 772 (1994). However, there must be a nexus between the commercial transaction and the lawsuit:

[T]he award of attorney's fees [under § 12–120(3) ] is not warranted every time a commercial transaction is remotely connected with the case. Rather, the test is whether the commercial transaction comprises the gravamen of the lawsuit. Attorney's fees are not appropriate under I.C. § 12–120(3) unless the commercial transaction is integral to the claim, and constitutes the basis upon which the party is attempting to recover.

*Brower v. E.I. DuPont De Nemours and Co.,* 117 Idaho 780, 784, 792 P.2d 345, 349 (1990).

In this case, there is no question that a "commercial transaction" as defined in § 12–120(3) is involved. Brady and CNA entered into an insurance contract that was not "for personal or household purposes." *See Intermountain Gas Co. v. Industrial Indem. Co. of Idaho,* 125 Idaho 182, 868 P.2d 510 (Ct. App.1994) (fees awarded pursuant to § 12–120(3) in action brought by insured to recover under terms of insurance agreement). The issue is whether that commercial transaction was the gravamen of CNA's lawsuit. We conclude that it was. CNA brought the present action seeking a judicial declaration regarding its contractual obligations to de-

fend° or pay damages. Both of these obligations are grounded in a "commercial" contract. Thus, the "commercial transaction" was the *entire* basis for this lawsuit.

As stated above, the district court's denial of fees to CNA seems to be based, in part, on the fact that no liability was established under the insurance contract. However, the fact of non-liability is irrelevant to the question of whether the lawsuit was based upon a commercial transaction; it merely indicates that one party rather than the other prevailed. In mandating an award of fees, § 12–120(3) does not distinguish between the parties and, as we stated in *Shirey*, "a prevailing party may recover fees even though no liability under a contract was established." 126 Idaho at 73, 878 P.2d at 772 (citing *Twin Falls Livestock Comm'n Co. v. Mid–Century Ins. Co.*, 117 Idaho 176, 786 P.2d 567 (Ct. App.1989)). Further, the fact that CNA brought the present action rather than simply waiting to be sued has no bearing on the attorney fees issue. *See Clement v. Franklin Inv. Group, Ltd.*, 689 F.Supp. 1575 (D.Idaho 1988). CNA should not be punished for bringing a declaratory judgment action. I.C. § 10–1212. Because the gravamen of this action is a "commercial transaction," CNA was entitled to an award of attorney fees below pursuant to I.C. § 12–120(3). Since CNA is also the prevailing party on appeal, we hold that it is entitled to an award of its reasonable attorney fees incurred on appeal pursuant to § 12–120(3). *E.g., Farm Credit Bank of Spokane v. Stevenson*, 125 Idaho 270, 869 P.2d 1365 (1994).

## VIII.

### CONCLUSION

The district court's grant of summary judgment to CNA, denial of partial summary judgment to Brady, and denial of Brady's motion to stay are affirmed. The denial of CNA's request for attorney fees under I.C. § 12–120(3) is reversed and the cause is remanded for a determination of reasonable attorney fees incurred by CNA below. Costs and attorney fees are awarded to CNA on appeal. Because we have determined that Brady is not the prevailing party, we do not address his request for an award of attorney fees on appeal.

McDEVITT, C.J., and JOHNSON, SILAK and SCHROEDER, JJ., concur.