109 P.3d 161

HAYDEN LAKE FIRE PROTECTION DISTRICT, and all other corporations, entities, or individuals similarly situated, Plaintiffs–Respondents,

v.

James M. ALCORN, Manager of the State Insurance Fund; Drew Forney, former Manager of the State Insurance Fund; W.W. Deal, Milford Terrell, Gerald Geddes, Wayne Meyer, and Marguerite Mc Laughlin, Directors of the State Insurance Fund; the State Insurance Fund, an independent body corporate politic; State of Idaho, acting by and through the Department of Administration; and State of Idaho, ex rel., Governor Kirk Kempthorne, Intervenor, Defendants–Appellants,

Kelso & Irwin, P.A., Plaintiff–Respondent,

v.

State Insurance Fund; and Drew Forney, Manager of the State Insurance Fund, individually, pursuant to I.C. § 72–907; and State of Idaho, acting by and through the Department of Administration, Defendant–Appellants.

No. 29715.

Supreme Court of Idaho, Coeur d'Alene, October 2004 Term.

Feb. 28, 2005.

Lawrence G. Wasden, Attorney General, Boise, for defendant-appellants. Michael S. Gilmore argued.

Ball Janik LLP, Portland, Oregon; Starr Kelso, Coeur d'Alene, for plaintiff-respondent's Hayden Lake Fire Protection District, et al. Kevin S. Mapes argued.

SCHROEDER, Chief Justice.

The Idaho State Insurance Fund, et al. (SIF) appeals the district court's denial of certain discretionary costs and attorney fees generated in defending a class action suit brought by Hayden Lake Fire Protection District and Kelso & Irwin, P.A. (HLFPD). HLFPD brought a class action suit against the SIF for various claims relating to the

SIF's surplus and real estate investments. That case was appealed to this Court and decided concurrently with this case.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

The SIF is a public entity created by Idaho statute which sells workers' compensation insurance to employers within the State of Idaho. In 1996 Kelso & Irwin, P.A. sued the SIF, alleging that it was threatening the solvency of its surplus by selling insurance policies with artificially low premiums. Kelso amended the Complaint in 1998, adding that the SIF's management of its surplus and certain investment practices violated statutory duties of the fund. The Amended Complaint was dismissed on a motion by the SIF, and Kelso appealed to this Court which affirmed the district court's ruling relating to low premiums but held that the claims regarding SIF's management of surplus and investment practices survived a motion to dismiss. The case was remanded to the district court. That court's decision was appealed and was affirmed by this Court. *Hayden Lake Fire v. Alcorn*, No. 28996, 141 Idaho 388, 111 P.3d 73, 2005 WL 455743 (Feb. 25, 2005).

While Kelso's initial appeal was pending, the Hayden Lake Fire Protection District sued the SIF, its Manager, and its Directors, claiming it was an employer insured by the SIF and could represent a class of all the SIF policyholders from 1995 to present. HLFPD alleged that the SIF's practices relating to premiums, surplus, dividends and investments breached the SIF's contracts with its policyholders by virtue of the fact that such practices violated the SIF's governing statutes. HLFPD also alleged that the same practices breach the implied covenant of good faith & fair dealing and the fiduciary duties the SIF had to its policyholders.

The district court consolidated Kelso and HLFPD's cases. The consolidated case was then certified as a class action with HLFPD as the class representative of all employers who purchased workers' compensation insurance policies from the SIF from 1995 to the present. The State of Idaho petitioned to intervene as an SIF policyholder, arguing it had a compelling interest in maintaining the solvency of the SIF, which it feared would be in jeopardy if HLFPD prevailed. The court granted the petition.

In November of 2000, HLFPD filed an amended complaints stating claims for breach of contract, breach of covenant, of good faith and fair dealing, breach of fiduciary duties, money had and received, rescission, declaratory relief, injunctive relief, equitable accounting, and attorney fees. All of HLFPD's claims were dismissed in summary judgment proceedings, except the claims for declaratory and injunctive relief.

The State submitted a Memorandum of Fees and Costs. The district court awarded the State, among other costs of right, a portion of their requested discretionary costs for photocopies and bate stamping which the court found necessary, reasonable and exceptional given the magnitude of the case and number of documents involved.

HLFPD and the SIF then filed cross-motions for summary judgment on the remaining declaratory and injunctive relief claims. HLFPD and the SIF relied on expert witnesses, a number of whom were from out of state. Among the experts for HLFPD were: (1) Jerry N. LeCompete[1], who analyzed a set of technical regulatory calculations known as Risk Based Capital ratios between the SIF and other public and privately-owned insurance carriers, (2) Richard Fallquist[2], who presented detailed calculations of SIF's premiums, surpluses and dividends under a variety of alternative management assumptions, (3) Michael Plesko, who addressed the State of Maine's insurance fund experience, three insolvent or near insolvent workers' compensation carriers in Mr. LeCompete's analysis and other measures related to adequacy of surplus; (4) Brad Janoush[3], who argued that the SIF's

---

1. Former President and CEO of Arizona State Insurance Fund, 1998–2000.

2. Fellow of the Casualty Actuarial Society, Principal of a Seattle-based actuarial firm.

3. Member of the Appraisal Institute (MAI), Certified General Appraiser, and experienced appraiser.

real estate investments in the Law Enforcement Complex, Parks & Recreation Headquarters and 954 West Jefferson did not provide an adequate rate of return such that no prudent investor would have entered into those transactions, (5) Ed Morse [4], who similarly contended that the SIF's investment in the J.R. Williams Building and 954 West Jefferson provided an inadequate rate of return and that the building's lease terms favored the State to the disadvantage of the SIF; and finally (6) James R. Tomlinson [5], who submitted analysis that the SIF's real estate investments were substantially below market rates and that the transactions' leaseback terms were unprecedented for the Boise area.

In response, the SIF engaged the expertise of: (1) Edward J. Muhl [6], who analyzed the SIF against a peer group of state funds to determine that the SIF was within a reasonable range of appropriate solvency margins and argued that Risk Based Capital was an appropriate test of degree of distressed finances which require regulatory intervention over an insurer; (2) Anthony Grippa [7], who testified that the SIF had retained a reasonable level of surplus from 1990–2000 and refuted the alternative management proposals of HLFPD's experts; (3) Michael Camilleri, who disputed HLFPD's experts on the surplus and dividend issues; (4) Phillip S. Fast and James A. Steele [8], who testified that the SIF's rate of return on its real estate investments were in line with others in the Boise market; (5) Mark. W. Richey [9] and Robert W. Smith [10], who used their appraisal expertise to show the SIF received a fair market value for its investments interest in the J.R. Williams Building and 954 West Jefferson; and finally (6) Martin Igo [11], who

testified, among other things, that the SIF's real estate transactions and leaseback terms were neither rare nor unprecedented for the Boise area. Additionally, the SIF hired Lori Peel (Peel), a paralegal with the Idaho State Attorney General's Office, to create an extensive document-tracking database for the over 6,200 documents created in the class action. The database consisted of over 44,000 pages and Peel's inter-agency bill totaled $8,288.00 for 187 hours of work at a billing rate of $44.00 per hour.

In a July 1, 2002, opinion the district court granted summary judgment in favor of the SIF on the remaining declaratory and injunctive relief claims. After denying HLFPD's motion for reconsideration, final judgment was entered in favor of the SIF on July 28, 2002. The SIF subsequently filed a memorandum of costs including attorney fees. The SIF itemized $28,301.14 in costs as a matter of right, $516,753.18 in discretionary costs (including $452,508.61 in additional expert witness fees and $8,288.00 for Ms. Peel's database creation fee), and $416, 020.50 in attorney fees. The district court granted the SIF all of its costs of right with the exception of $2,000 for Martin Igo, a portion of their requested discretionary costs and none of the requested attorney fees.

The district court found the SIF's expert witness costs over $2,000 per witness were reasonable but not "exceptional" and therefore would not be granted. The court made no mention of the discretionary cost requests related to Peel's database creation and management bill. Finally, the court rejected the SIF's request for attorney fees on the basis that Idaho Code § 41–1839(4) provided the sole remedy for cases arising out of the

---

4. Member of the Appraisal Institute (MAI) and J.D.

5. Expert in development, acquisition and management of investment real estate since 1969.

6. Former Maryland Commissioner of Insurance, New York Superintendent, Vice President and President of the National Association of Insurance Commissioners (oversaw the State Insurance Commissioner's Central Office).

7. Fellow of the Casualty Actuarial Society, Member of the American Academy of Actuaries, For-

mer Vice President and Chief Actuary for the National Council on Compensation Insurance (NCCI).

8. Former Manager of Merrill Lynch offices in Denver, Palo Alto and Boise.

9. Member of the Appraisal Institute (MAI).

10. Holder of Idaho General Real Estate Appraiser Certificate No. 1, business associate of Mr. Richey.

11. Principal of the Igo Company.

context of an insurance contract. A Supplemental Judgment Award of Costs was entered against HLFPD for $29,867.41 jointly and severally. SIF filed a timely appeal of the award.

## II.

## AN INSURED'S SUIT FOR ALLEGED BREACH OF STATUTORY DUTIES INCORPORATED INTO AN INSURANCE AGREEMENT DOES NOT CONSTITUTE A DISPUTE "ARISING UNDER POLICIES OF INSURANCE" FOR PURPOSES OF APPLYING IDAHO CODE § 41–1839(4)

### A. Standard of Review

■ An interpretation of a statute is a question of law over which appellate courts exercise free review. *Kelso v. State Ins. Fund*, 134 Idaho 130, 134, 997 P.2d 591, 595 (2000) (citing *State v. Hagerman Water Right Owners*, 130 Idaho 727, 732, 947 P.2d 400, 405 (1997)).

### B. The SIF cannot recover attorney fees under Idaho Code § 12–120(3).

The SIF argues it is entitled to attorney fees as a matter of right under Idaho Code § 12–120(3), which provides that the prevailing party of a suit involving a commercial transaction is entitled to an award of reasonable attorney fees. According to the SIF the purchase of workers' compensation insurance is a commercial transaction as defined by the statute because it is not a transaction for personal or household purposes. *Cont'l Cas. Co. v. Brady*, 127 Idaho 830, 835, 907 P.2d 807, 812 (1995). The SIF maintains that the district court erred in finding Idaho Code § 41–1839(4) is the sole remedy regarding attorney fees. According to the SIF, I.C. § 41–1839(4), when read together with its other subsections, applies only to policy-based insurance disputes, and HLFPD's class action involved alleged statutory violations by the SIF. HLFPD maintains that Idaho Code § 41–1839(4) unambiguously applies to the facts of this case and provides the SIF its sole remedy regarding an award of attorney fees.

■ The objective of statutory construction is to derive the intent of the legislature. *Kelso v. State Ins. Fund*, 134 Idaho 130, 134, 997 P.2d 591, 595 (2000). Statutory construction begins with the literal language of the statute. *D & M Country Estates Homeowners Ass'n v. Romriell*, 138 Idaho 160, 165, 59 P.3d 965, 970 (2002). Where a statute is unambiguous, statutory construction is unnecessary and courts are free to apply the plain meaning. *Martin v. State Farm Mut. Auto. Ins. Co.*, 138 Idaho 244, 246, 61 P.3d 601, 603 (2002). Ambiguity occurs where reasonable minds might differ as to interpretations. *State v. Browning*, 123 Idaho 748, 749, 852 P.2d 500, 501 (Ct.App.1993). However, ambiguity is not established merely because the parties present differing interpretations to the court. *Rim View Trout Co. v. Higginson*, 121 Idaho 819, 823, 828 P.2d 848, 852 (1992). In the case of ambiguous language, courts will analyze the reasonableness of proposed interpretations and consider the "context in which language is used, the evils to be remedied and the objects in view." *Ada County v. Gibson*, 126 Idaho 854, 857, 893 P.2d 801, 804 (Ct.App.1995)(citing *Local 1494 of Intl. Ass'n of Firefighters v. City of Coeur d'Alene*, 99 Idaho 630, 639, 586 P.2d 1346, 1355 (1978)). Generally, interpretations that could lead to absurd or unreasonably harsh results are disfavored. *Id.* at 856, 893 P.2d at 803 (citations omitted).

■ Idaho Code § 41–1839(4) "provide[s] the exclusive remedy for the award of statutory attorney fees in all actions between insureds and insurers involving disputes *arising under policies of insurance.*" I.C. § 41–1839(4)(2003)(emphasis added). This statute bars recovery of attorney fees under alternative statutory provisions, including specifically, I.C. § 12–120(3), which awards attorney fees to the prevailing party in a suit involving a commercial transaction. I.C. § 12–120(3)(2003); *J.R. Simplot Co. v. W. Heritage Ins. Co.*, 132 Idaho 582, 585, 977 P.2d 196, 199 (1999). It is undisputed that the SIF's statutory obligations were incorporated into its workers' compensation insurance contract with HLFPD. The plain language of I.C. § 41–1839(4) indicates that it applies to all actions between insureds and

insurers. However, the statute also limits itself to those actions "arising under policies of insurance." I.C. § 41–1839(4). Black's Law Dictionary defines the word "arise" to mean "to originate; to stem (from)" and includes the example phrase, "a federal claim *arising under* the U.S. Constitution". Blacks Law Dictionary (Garner 6th ed.1999)(emphasis added). Applying this definition, I.C. § 41–1839(4) applies to litigation "originating" from insurance policies. HLPFD's claims arise, however, both by virtue of its insurance contracts and the statutory obligations governing the SIF's management of its funds.

▆ Nearly all Idaho case law applying I.C. § 41–1839(4) involves cases with policy-based claims. *See e.g. Primary Health Network, Inc. v. State,* 137 Idaho 663, 52 P.3d 307 (2002)(dealing with health insurer that brought action to recover monies paid out to a party later determined not to be an insured member); *Allstate Ins. Co. v. Mocaby,* 133 Idaho 593, 990 P.2d 1204 (1999) (addressing whether a homeowner's grandson was a "covered" person under a homeowner's insurance policy); *J.R. Simplot Co.,* 132 Idaho at 583–84, 977 P.2d at 197–98 (involving a suit for indemnification under an insurance policy agreement prior to appeal on issue of attorney fees); *Union Warehouse & Supply Co., Inc. v. Il. R.B. Jones Inc.,* 128 Idaho 660, 917 P.2d 1300 (1996). Additionally, when adopting subsection four of the statute, the House of Representatives noted that the purpose of the statute was:

> [T]o return the law to a pre-Continental Casualty position to provide that Section 41–1839 is the exclusive attorneys' fees statute that applies to insurance disputes, and *to provide incentives for insurance companies to reach agreements with their insureds rather than initiating litigation against their insureds whenever a claim may be filed.*

Statement of Purpose 05963 on H. 713, 53rd Leg., 2nd Sess. (1996)(emphasis added). *Continental Casualty Co.* declined to follow § 41–1839 in the context of a dispute involving a commercial transaction because I.C. § 12–120(3) also applied. *Cont'l Cas. Co.,* 127 Idaho 835, 907 P.2d at 814. This legislative statement demonstrates that the statute was intended to encourage settlements between insureds and their insurer regarding *policy-based* claims. Both Idaho case law and legislative history suggest subsection four does not apply to *statutory-based* litigation. Consequently, I.C. § 41–1839(4) does not bar recovery of attorney fees for the SIF under I.C. § 12–120(3).

▆ Idaho Code § 12–120(3) mandates an award of attorney fees to the prevailing party in a suit involving a commercial transaction, defining a commercial transaction as "all transactions except transactions for personal or household purposes." I.C. § 12–120(3). However, where the gravamen of a complaint regards a violation of a statute rather than a contract or commercial transaction, I.C. § 12–120(3) does not apply. *Shay v. Cesler,* 132 Idaho 585, 588, 977 P.2d 199, 202 (1999). The gravamen of HLFPD's complaint was whether the SIF violated its statutory obligations imposed by its workers' compensation insurance contracts. Consequently, the SIF is not entitled to a reasonable award of attorney fees under I.C. § 12–120(3).

## III.

**THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE SIF'S REQUEST FOR EXPERT WITNESS FEES IN EXCESS OF THE STATUTORY COSTS OF RIGHT FOR SUCH EXPERTS**

### A. Standard of Review

▆ In reviewing whether or not a district court abused its discretion regarding an award or denial of discretionary costs, this Court analyzes:

> (1) whether the trial court correctly perceived the issue as discretionary; (2) whether the trial court acted within the boundaries of its discretion and consistent with the applicable legal standards; and (3) whether the trial court reached its determination through an exercise of reason.

*Zimmerman v. Volkswagen of Am., Inc.,* 128 Idaho 851, 857, 920 P.2d 67, 73 (1996).

A trial court may, in its discretion, award a prevailing party certain costs where there has been "a showing that the costs are necessary and exceptional, reasonably incurred, and should in the interests of justice be assessed against the adverse party." I.R.C.P. 54(d)(1)(D). Any party opposing an award of discretionary costs bears the burden of demonstrating an abuse of this discretion by the trial court. I.R.C.P. 54(d)(1)(C),(D); *Great Plains Equip., Inc. v. Northwest Pipeline Corp.*, 136 Idaho 466, 474, 36 P.3d 218, 226 (2001) (citing *Perkins v. United States Transformer W.*, 132 Idaho 427, 431, 974 P.2d 73,77 (1999)).

Discretionary costs may include "long distance phone calls, photocopying, faxes, travel expenses" and additional costs for expert witnesses. *Auto. Club Ins. Co. v. Jackson*, 124 Idaho 874, 880, 865 P.2d 965, 971 (1993); *Bailey v. Sanford*, 139 Idaho 744, 755, 86 P.3d 458, 469 (2004) (citing *Turner v. Willis*, 116 Idaho 682, 686, 778 P.2d 804, 808 (1989)). The trial court must make express findings as to why a party's discretionary costs should or should not be allowed. I.R.C.P. 54(d)(1)(D); *id.* Express findings as to the general character of requested costs and whether such costs are necessary, reasonable, exceptional, and in the interests of justice is sufficient to comply with this requirement. *See Inama v. Brewer*, 132 Idaho 377, 384, 973 P.2d 148, 155 (1999); *Fish v. Smith*, 131 Idaho 492, 494, 960 P.2d 175, 177 (1998) (affirming trial court's denial of discretionary costs for expert witness fees despite the fact that the court did not evaluate each cost item by item).

This Court has always construed the requirement that a cost be "exceptional" under I.R.C.P. 54(d)(1)(D) to include those costs incurred because the nature of the case was itself exceptional. In *Great Plains Equip.*, the Court specifically noted that discretionary costs, including those for expert witness fees, were "exceptional given the magnitude and nature of the case." *Great Plains Equip.*, 136 Idaho at 475, 36 P.3d at 227. Furthermore, *Fish* held that a district court did not abuse its discretion in denying discretionary costs associated with expert witness fees where the trial court had properly determined the case itself was not "exceptional." *Fish*, 131 Idaho at 493, 960 P.2d at 177. Certain cases, such as personal injury, cases generally involve copy, travel and expert witness fees such that these costs are considered ordinary rather than "exceptional" under I.R.C.P. 54(d)(1)(D). *See e.g. Inama*, 132 Idaho at 384, 973 P.2d at 155.

In reviewing a grant or denial of discretionary costs, the key issue is whether the record indicates express findings by the district court as to whether a cost was necessary, reasonable, exceptional and should be awarded in the interests of justice. The district court does not have to engage in a lengthy discussion of these factors. This Court has previously affirmed denials of discretionary costs where the trial court merely asserted they did not find requested costs necessary, reasonable or exceptional. *See Fish*, 131 Idaho at 493, 960 P.2d at 177; *Roe v. Harris*, 128 Idaho 569, 573, 917 P.2d 403, 407 (1996). Here, the trial court found that:

> [T]his is a class action that may have affected 1000s of Idaho businesses. The nature of this action of necessity required the use of numerous expert witnesses, thus I find that SIF's expert witnesses were necessary. Based upon the showing made I find that their fees were reasonable. Given the nature and scope of this case, I do not find them exceptional.

The record indicates the district court considered the nature of this case as a class action and its effect on numerous Idaho businesses and found that although expert witnesses were necessary and their fees reasonable, the costs were not exceptional for a class action suit. The district court recognized that the decision to deny additional expert witness fees was a matter of discretion and applied the correct legal standard.

The district court's denial was likewise a reasonable conclusion. A court's description of the circumstances giving rise to a grant or denial of discretionary costs is sufficient to satisfy the court's obligation to exercise reason in its decisions. *See Richard J & Esther E. Wooley Trust v. DeBest Plumbing, Inc.*, 133 Idaho 180, 187, 983 P.2d 834, 841 (1999). In this case the district court found

that the outcome could affect over one thousand local businesses and involve potential damages of over $50,000,000.00. This description adequately portrays the magnitude of the suit and suggests that the district court found the need for expert witnesses an essential but ordinary part of such litigation. Complex business litigation often relies on expert witnesses to explain alternative management schemes and/or financing. The district court's denial of the SIF's additional expert witness fees was not an abuse of discretion.

## IV.

## THE DISTRICT COURT MUST MAKE FINDINGS ON THE COST OF CREATING AND MANAGING A DOCUMENT–TRACKING DATABASE

The SIF argues the district court did not satisfy the test laid out in *Israel v. Leachman*, 139 Idaho 24, 72 P.3d 864, 866 (2003) in denying it discretionary costs associated with the creation and management of a document-tracking database. *Israel*, 139 Idaho at 27, 72 P.3d at 866. The district court granted the States' requested costs for photocopying and bate stamping which is also a form of document management, but provided no reason for its denial of Peel's electronic document-management fees.

According to HLFPD, those charges were incurred by the SIF's paralegal and therefore should be itemized as attorney fees rather than as discretionary costs.

■ The district court may in its discretion award a prevailing party certain costs where there has been "a showing that the costs are necessary and exceptional, reasonably incurred, and should in the interests of justice be assessed against the adverse party." I.R.C.P. 54(d)(1)(D). Any party opposing the award will bear the burden of demonstrating an abuse of discretion by the trial court. I.R.C.P. 54(d)(1)(C),(D); *Great Plains Equip., Inc. v. Northwest Pipeline Corp.*, 136 Idaho 466, 474, 36 P.3d 218, 226 (2001)(citing *Perkins v. United States Transformer W.*, 132 Idaho 427, 431, 974 P.2d 73,77 (1999)). When ruling upon objections to discretionary costs the district court is required

to make express findings as to whether the costs are reasonable, necessary, and exceptional and should be awarded against the adverse party in the interests of justice. I.R.C.P. 54(d)(1)(D); *Perry v. Magic Valley Reg'l Med. Ctr.*, 134 Idaho 46, 60, 995 P.2d 816, 830 (2000)(where trial court failed to describe the circumstances giving rise to its allowing or disallowing certain costs the reviewing court could not determine if the trial court had applied the correct legal standard).

■ The SIF's Memorandum of Costs requests an award of discretionary costs associated with Peel's work creating and managing a document-tracking database used in this case. However, in denying the SIF's discretionary costs, no mention is made of Peel's bill or why the fees were denied. It may be that in denying attorney fees the district court included Peel's costs in the denial. However, the SIF submitted Peel's bill as a discretionary cost and the district court must make a finding as to why the fee was denied.

## V.

## THE DISTRICT COURT IS NOT REQUIRED TO MAKE A FINDING FOR DENIAL OF DISCRETIONARY COSTS ON ALTERNATIVE GROUNDS

■ HLFPD argues that although the district court denied the SIF's discretionary costs on alternative grounds, this decision should be affirmed on the grounds that an award of discretionary costs would be against the interests of justice. HLFPD says it is a small fire district and was forced to purchase the SIF's workers' compensation insurance because of its status as an Idaho governmental agency that pursued this case on behalf of its policyholders. Therefore, justice would not be served by assessing the SIF's requested discretionary costs solely against them as class representative.

■ An issue is ripe for appeal where it is definite and concrete, presents a real and substantial controversy and has a present need for adjudication. *Noh v. Cenarrusa*, 137 Idaho 798, 801, 53 P.3d 1217, 1220 (2002).

I.R.C.P. 54(d)(1)(D) requires the district court to make express findings regarding the circumstances surrounding a grant or denial of discretionary costs. I.R.C.P. 54(d)(1)(D); *Perry*, 134 Idaho at 60, 995 P.2d at 830. Included in these express findings is whether certain costs should, in the interest of justice, be awarded against an adverse party. I.R.C.P. 54(d)(1)(D); *Swallow v. Emergency Med. of Idaho, P.A.*, 138 Idaho 589, 598, 67 P.3d 68, 77 (2003).

In this case the district court denied the SIF's requests for discretionary costs on alternative grounds from that of "in the interests of justice." The only discretionary costs the SIF appeals are those related to expert witness fees and Peel's document-management fee. The district court determined the SIF's expert witness fees were not "exceptional" under I.R.C.P. 54(d)(1)(D). The district court therefore was not required to rule on the issue of whether the fee should be assessed in the interests of justice. The issue of whether this cost should be awarded in the interests of justice is not ripe for appeal.

## VI.

### CONCLUSION

The SIF is barred from seeking an award of attorney fees under Idaho Code § 12–120(3) because the gravamen of HLFPD's Complaint involved alleged statutory violations and not a commercial transaction. The district court did not abuse its discretion in denying exceptional expert witness fees to the SIF. The district court must make findings regarding its denial of Peel's documents-management fee. The SIF has prevailed in the case out of which this appeal arises. HLFPD has prevailed on the issue of attorney fees and discretionary costs in the appeal, except for the unresolved issue of Peel's work. The case is remanded for a determination of attorney fees to be awarded for the proceedings before the district court. Neither party is entitled to costs or attorney fees on appeal.

Justice KIDWELL, EISMANN and BURDICK, and Pro Tem. Justice WALTERS concur.

